# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

LISA WHITE, KELLY
DOBRANSKY, ARTHUR
ZADROZNY, KELLY MAYOR,
AND MELISSA EISENHART on
behalf of themselves and all others
similarly situated,

        Plaintiffs,

    v.

FCA US LLC,

        Defendant.

Case No.: 2:21-cv-11696-JEL-DRG

District Judge Judith E. Levy

Magistrate Judge David R. Grand

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS

*Page*

I       INTRODUCTION ................................................................1

II      JURISDICTION AND VENUE...........................................6

III     PARTIES ..........................................................................7

        A.      Plaintiffs ..............................................................7

                1.      Lisa White ..................................................7

                2.      Kelly Dobransky ........................................8

                3.      Arthur Zadrozny.......................................10

                4.      Kelly Mayor ..............................................11

                5.      Melissa Eisenhart ....................................13

        B.      Defendant FCA .................................................14

IV      FACTUAL ALLEGATIONS.............................................15

        A.      The Sliding Door Latch Defect ..........................15

                1.      The Sliding Door Latch Defect Is a Serious Safety Defect ......24

                2.      Defendant Has Known About the Sliding Door Latch Defect
                        Since at Least 2008 ..................................29

                        a.      FCA's Knowledge Gained from Pre-Release Design,
                                Manufacture, and Test Data............................30

## TABLE OF CONTENTS (cont.)

*Page*

b.  FCA's Knowledge of the Defect Gained from Warranty, Repair, and Parts Sales Data............................................31

c.  FCA's Knowledge Gained from Voluminous NHTSA Complaints....................................................................32

**d.  FCA's Knowledge Based on Its Technical Service Bulletins and NHTSA's Investigation...........................44**

i.  August 10, 2016 Technical Service Bulletin 10177524............................................................44

ii.  June 4, 2020 Technical Service Bulletin 23-017-250 ..........................................................45

iii.  Investigation by NHTSA......................................46

B.  FCA Touted the Class Vehicles as Safe and Reliable Family Vehicles while Omitting the Sliding Door Latch Defect...................................47

C.  FCA's Warranties...............................................................58

V   TOLLING OF STATUTES OF LIMITATIONS.........................................59

VI  CLASS ACTION ALLEGATIONS................................................59

VII CAUSES OF ACTION........................................................64

ii

**TABLE OF CONTENTS (cont.)**

*Page*

A.    Claims Brought on Behalf of the Nationwide Class ..........................64

COUNT I: VIOLATIONS OF THE MAGNUSSON-MOSS

WARRANTY ACT ........................................................64

B.    Claims Brought on Behalf of the Florida Class ..................................67

COUNT II: VIOLATION OF UNFAIR & DECEPTIVE TRADE

PRACTICES ACT ...................................................67

COUNT III: BREACH OF EXPRESS WARRANTY ......................68

COUNT IV: BREACH OF THE IMPLIED WARRANTY OF

MERCHANTABILITY ............................................71

COUNT V: BREACH OF CONTRACT/COMMON LAW

WARRANTY..........................................................73

COUNT VI: FRAUD BY CONCEALMENT ..................................74

COUNT VII: UNJUST ENRICHMENT ...........................................76

C.    Claims Brought on Behalf of the Hawaii Class ..................................77

COUNT VIII: UNFAIR COMPETITION AND PRACTICES..........77

COUNT IX: VIOLATION OF HAWAII'S UNIFORM DECEPTIVE

TRADE PRACTICE ACT.......................................78

**TABLE OF CONTENTS (cont.)**

*Page*

COUNT X: BREACH OF EXPRESS WARRANTY ........................81

COUNT XI: BREACH OF IMPLIED WARRANTY OF

       MERCHANTABILITY ...............................................84

COUNT XII: BREACH OF CONTRACT/COMMON LAW

       WARRANTY.............................................................86

COUNT XIII: UNJUST ENRICHMENT .........................................87

D.    Claims Brought on Behalf of the Maine Class ...................................88

COUNT XIV: VIOLATION OF MAINE UNFAIR TRADE

       PRACTICES ACT ...................................................88

COUNT XV: FRAUDULENT CONCEALMENT ...........................91

COUNT XVI: BREACH OF IMPLIED WARRANTY ...................94

COUNT XVII: BREACH OF EXPRESS WARRANTY.................95

E.    Claims Brought on behalf of the Pennsylvania Class.......................97

COUNT XVIII: VIOLATION OF PENNSYLVANIA UNFAIR

       TRADE PRACTICES AND CONSUMER PROTECTION

       LAW.........................................................................97

COUNT XIX: BREACH OF EXPRESS WARRANTY .................100

## TABLE OF CONTENTS (cont.)

*Page*

COUNT XX: Breach of Implied Warranty of Merchantability ........102

COUNT XXI: FRAUDULENT OMISSION ....................................103

F.    Claims Brought on Behalf of the Virginia Class .............................105

COUNT XXII: VIRGINIA CONSUMER PROTECTION ACT .....105

COUNT XXIII: BREACH OF EXPRESS WARRANTY ...............109

COUNT XXIV: BREACH OF IMPLIED WARRANTY OF

MERCHANTABILITY ..........................................................111

COUNT XXV: FRAUDULENT CONCEALMENT/OMISSION ...113

VIII   PRAYER FOR RELIEF .............................................................................115

DEMAND FOR JURY TRIAL ...........................................................................115

Plaintiffs Lisa White, Kelly Dobransky, Arthur Zadrozny, Kelly Mayor, and Melissa Eisenhart ("Plaintiffs") bring this action against Defendant FCA US, LLC ("Defendant" or "FCA"), by and through their attorneys, individually and on behalf of all others similarly situated, upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief and based upon investigation, allege as follows:

## I     <u>INTRODUCTION</u>

1.     This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of certain Chrysler and Dodge-brand vehicles (the "Class Vehicles")[1] sold with defective door-latching systems. This action arises from FCA's failure, despite its longstanding knowledge of a material design and manufacturing defect, to disclose the Sliding Door Latch Defect (as defined below) to Plaintiffs and other consumers.

2.     The rear power sliding door latch system consists of door handles, linkages, latches, actuators and locks. Operation of the door handle disengages the latch, allowing release from the door pillar. A locking mechanism is positioned between the door handle and latch. The lock is powered by a motor driven actuator.

---

[1] The Class Vehicles include all model year 2010-2020 model year Dodge Grand Caravan and 2010-2016 model year Chrysler Town & Country vehicles. Plaintiffs reserve the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles.

The actuator bears responsibility for locking and unlocking the power door locks upon command by a switch RF remote key fob.

3.      As defined herein, the Sliding Door Latch Defect in the Class Vehicles involves lock actuators and/or door latches that mechanically fail and lose locking and unlocking capability when operated manually or by button command.

4.      The Sliding Door Latch Defect presents a serious risk to occupants. When the latch system fails in the locked position, doors will not open by hand, switch or remote key fob command. When the latch system fails in the unlocked position, doors will not lock by hand, switch or remote key fob command. Failure in the unlocked position invites risks, such as children opening doors while a Class Vehicle is in motion. The potential for dual latch system failure in the Class Vehicles multiplies the risk to safety. Furthermore, if this condition continues when the vehicle is turned off, it can drain the vehicle's battery and leave the vehicle's operator and passengers stranded. As a result, the door lock actuators and/or latch systems must be replaced, resulting in costly repairs to consumers that also fail to remedy the root cause of the Sliding Door Latch Defect.

5.      All Class Vehicles are equipped with the same or substantially similar door latch systems. All the Class Vehicles were manufactured with same sliding

door latches—Part Numbers 68030378[2] (right door) and 68030379[3] (left door)—and sliding door actuators—Part Numbers 5020678[4] (right door) and 5020679[5] (left door). Dodge and Chrysler used these same parts and part numbers in minivans since the launch of the fifth generation minivans in 2008. The Class Vehicles are members of the fifth generation.

6.     On April 30, 2009, Chrysler LLC filed for protection under the United States Bankruptcy Code. Defendant acquired all assets and liabilities in June 2009 and continued manufacturing and selling Class Vehicles with defective door latch systems.

7.     FCA has known about the Sliding Door Latch Defect since at least 2010. In fact, FCA admitted the existence of the Sliding Door Latch Defect in two Technical Service Bulletins ("TSBs"). Yet, notwithstanding its longstanding knowledge, FCA failed to disclose the Sliding Door Latch Defect and charges Class members to repair the Class Vehicles.

---

[2] Exhibit 2, https://www.mymoparparts.com/oem-parts/mopar-sliding-door-latch-right-68030378ag
[3] Exhibit 3, https://www.mymoparparts.com/oem-parts/mopar-sliding-door-latch-left-68030379ag
[4] Exhibit 4, https://www.mymoparparts.com/oem-parts/mopar-sliding-door-actuator-right-5020678ac
[5] Exhibit 5, https://www.mymoparparts.com/oem-parts/mopar-sliding-door-actuator-left-5020679ac

8.     Many owners and lessees of Class Vehicles have requested goodwill repair of the Sliding Door Latch Defect from FCA and its agents. FCA refuses to do so.

9.     FCA has taken no action to correct the root cause of the Sliding Door Latch Defect, despite whether its symptoms appear during or outside of the applicable warranty period. Because symptoms of the Sliding Door Latch Defect typically appear during and shortly outside of the warranty period—and given FCA's knowledge of this concealed, safety-related design defect—FCA's attempt to limit the applicable warranties with respect to the Sliding Door Latch Defect is unconscionable. Moreover, if/when FCA repairs vehicles presented for Sliding Door Latch Defect repair, it removes and replaces defective parts with new versions of the same defective parts.

10.     Not only did FCA actively conceal the fact that particular components within the door latch system do not function properly, FCA also failed to advise Class members that the components within the door latch system are defective (and require costly repairs to fix), and that the existence of the Sliding Door Latch Defect diminishes the Class Vehicles' intrinsic and resale value by creating the safety risks described herein.

11.     Despite notice and knowledge of the Sliding Door Latch Defect from the numerous consumer complaints it received, warranty claims and customer

complaints submitted by dealers, pre-sale durability testing, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, including similar door latch part failures in prior model year vehicles, FCA has not recalled the Class Vehicles to repair the Sliding Door Latch Defect, extended the warranty of Class Vehicles, offered its customers a suitable repair or replacement free of charge, or reimbursed consumers who incurred out-of-pocket expenses to repair the Sliding Door Latch Defect.

12.    As a result of FCA's unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. FCA conducted these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

13.    Had Plaintiffs and other Class members known about the Sliding Door Latch Defect at the time of purchase or lease, they would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

14.    As a result of the Sliding Door Latch Defect and the monetary costs associated with attempting to repair it, Plaintiffs and other Class members have suffered injury in fact, incurred damages, and have been otherwise harmed by FCA's conduct.

15.     Accordingly, Plaintiffs bring this action to redress FCA's common law violations; violations of the Magnuson-Moss Warranty Act; and violations of various states' consumer fraud and warranty statutes.

## II     JURISDICTION AND VENUE

16.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and one or more of the Plaintiffs and/or the Class is a citizen of a different state than FCA.

17.     This Court has personal jurisdiction over Plaintiffs because they submit to the Court's personal jurisdiction. This Court has personal jurisdiction over FCA because FCA conducted and continues to conduct substantial business in this District; its corporate headquarters is located in this District; and because it has committed the acts and omissions complained of herein in this District, including marketing, selling, and leasing Class Vehicles in this District.

18.     Venue as to FCA is proper in this judicial district under 28 U.S.C § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, maintains its corporate headquarters within this District, and many of FCA's acts complained of herein occurred within this District, including the marketing and leasing of the Class Vehicles to Plaintiffs and members of the putative Class in this District.

### III   PARTIES

**A.   Plaintiffs**

**1.   Lisa White**

19.    Ms. White is a citizen of Maine, residing in Wells, Maine.

20.    On or around September 15, 2018, Ms. White purchased a new 2018 Dodge Grand Caravan from Marc Motors Chrysler Dodge Jeep Ram, an authorized FCA dealer and repair center located in Sanford, Maine.

21.    Ms. White purchased (and still owns) this vehicle and uses it for personal, family, and/or household purposes.

22.    On or before March 12, 2021, Ms. White observed the rear passenger side door failing to lock. She presented the vehicle to Marc Motors Chrysler Dodge Jeep Ram for repair on March 12, 2021, with the vehicle odometer reading 53,429 miles. The dealership technician verified and replaced the failed parts and charged Ms. White $630.80.

23.    Prior to purchasing her vehicle, Ms. White reviewed promotional materials FCA distributed, including its TV advertisements, website, and sales brochures obtained from her local dealership, as well as the Monroney new vehicle window sticker. However, FCA did not disclose the Sliding Door Latch Defect in any of these materials.

24.     Ms. White has suffered an ascertainable loss resulting from FCA's omissions associated with the Sliding Door Latch Defect including, but not limited to, her out-of-pocket costs associated with having to repair the Sliding Door Latch Defect and future attempted repairs and diminished value of her vehicle.

25.     Neither FCA, nor any of its agents, dealers, or other representatives informed Ms. White of the existence of the Sliding Door Latch Defect prior to either her purchase of the vehicle, or when she took the vehicle in for repair.

26.     Had FCA disclosed the Sliding Door Latch Defect, she would not have purchased her Class Vehicle our would have paid less for it.

**2.    Kelly Dobransky**

27.     Ms. Dobransky is a citizen of Pennsylvania, residing in Sarver, Pennsylvania.

28.     On or around June 7, 2016, Ms. Dobransky purchased a used 2015 Chrysler Town & Country from Solomon Chrysler Jeep and Dodge – Brownsville, an authorized FCA dealership and repair center located in Brownsville, Pennsylvania.

29.     Ms. Dobransky purchased (and still owns) this vehicle, and uses it for personal, family, and/or household purposes.

30.     In or before July 2017, Ms. Dobransky observed the passenger side rear sliding door not responding to remote, switch, or manual commands. She presented

her vehicle to Cochran Chrysler Dodge Jeep and Ram in Natrona Heights, Pennsylvania for replacement, which replaced her door lock actuator under warranty. However, the repair did not cure the Sliding Door Latch Defect and its symptoms returned in Ms. Dobransky's vehicle. In October 2020, the passenger side rear sliding door became inoperable again. Ms. Dobransky presented her vehicle to Cochran Chrysler Dodge Jeep and Ram for repeat warranty repair, but the dealership insisted that she pay for the work.

31.     Prior to purchasing her vehicle, Ms. Dobransky was exposed to FCA's pervasive branding message and promotional materials, including TV advertisements, FCA's website, and sales brochures. However, FCA did not disclose the Sliding Door Latch Defect.

32.     Ms. Dobransky has suffered an ascertainable loss as a result of FCA's omissions associated with the Sliding Door Latch Defect, including, but not limited to, her out-of-pocket costs associated with having to repair the Sliding Door Latch Defect and future attempted repairs and diminished value of her vehicle.

33.     Neither FCA, nor any of its agents, dealers, or other representatives informed Ms. Dobransky of the existence of the Sliding Door Latch Defect prior to either her purchase of the vehicle, or when she took the vehicle in for repair.

34.     Had FCA disclosed the Sliding Door Latch Defect, she would not have purchased her Class Vehicle or would have paid less for it.

### 3. Arthur Zadrozny

35.    Mr. Zadrozny is a citizen of Virginia, residing in Clifton, Virginia.

36.    In or around February 2015, Mr. Zadrozny purchased a new 2015 Dodge Grand Caravan from Fair Oaks Chantilly Dodge, an authorized FCA dealership and repair center located in Chantilly, Virginia.

37.    Mr. Zadrozny purchased (and still owns) this vehicle, and uses it for personal, family, and/or household purposes.

38.    In or before October 2020, when the vehicle had approximately 80,000 miles on it, Mr. Zadrozny observed the driver side rear sliding door not responding to remote, switch or manual commands. He presented his vehicle to Fair Oaks Chantilly Dodge for repair, but the dealership denied him free repair for the work.

39.    Prior to purchasing his vehicle, Mr. Zadrozny was exposed to FCA's pervasive branding message and promotional materials, including TV advertisements, FCA's website, sales brochures, and the window sticker. However, FCA did not disclose the Sliding Door Latch Defect.

40.    Mr. Zadrozny has suffered an ascertainable loss as a result of FCA's omissions associated with the Sliding Door Latch Defect, including, but not limited to, his out-of-pocket costs associated with having to repair the Sliding Door Latch Defect and future attempted repairs and diminished value of his vehicle.

41.     Neither FCA, nor any of its agents, dealers, or other representatives informed Mr. Zadrozny of the existence of the Sliding Door Latch Defect prior to either his purchase of the vehicle, or when he presented the vehicle for repair.

42.     Had FCA disclosed the Sliding Door Latch Defect, he would not have purchased his Class Vehicle or would have paid less for it.

**4.    Kelly Mayor**

43.     Ms. Mayor is a citizen of Florida, residing in Crestview, Florida.

44.     On October 23, 2017, Ms. Mayor purchased a new 2017 Dodge Grand Caravan from Fair Oaks Chantilly Dodge, an authorized FCA dealership and repair center located in Chantilly, Virginia.

45.      Ms. Mayor purchased (and still owns) this vehicle, and uses it for personal, family, and/or household purposes.

46.     In June 2021, Ms. Mayor realized that both rear sliding doors were failing to lock.  Ms. Mayor discovered the problem when she realized that their young daughter had been opening the sliding door before they had the opportunity to unlock it. On the passenger side sliding door, the door is completely stuck in the unlocked position, and will not respond to remote, switch, or manual commands. On the driver side sliding door, the door can only be locked manually.  But if the door is locked manually, it cannot be unlocked by remote or switch command.  Instead, a

passenger must enter the vehicle from another door and manually unlock the door to allow passengers to enter the vehicle.

47.    On July 28, 2021, Ms. Mayor took the vehicle to Chrysler Dodge Jeep Ram Fiat Crestview in Crestview, Florida to diagnose the problem.  The dealership recommended an actuator replacement for both doors and quoted a price of $1,875.97 for the parts and labor necessary to repair the vehicle. Ms. Mayor then called Dodge consumer service after researching and finding that this was a common problem in the Class Vehicles. Dodge then offered to pay part, but not all, of the cost of the repairs.

48.    Prior to purchasing the vehicle, Ms. Mayor was exposed to FCA's pervasive branding message and promotional materials, including TV advertisements, FCA's website, sales brochures, and the window sticker. However, FCA did not disclose the Sliding Door Latch Defect.

49.    Ms. Mayor has suffered an ascertainable loss resulting from FCA's omissions associated with the Sliding Door Latch Defect, including, but not limited to, the costs associated with having to repair the Sliding Door Latch Defect and future attempted repairs and diminished value of her vehicle.

50.    Neither FCA, nor any of its agents, dealers, or other representatives informed Ms. Mayor of the existence of the Sliding Door Latch Defect prior to either her purchase of the vehicle, or when she presented the vehicle for repair.

51.     Had FCA disclosed the Sliding Door Latch Defect, Ms. Mayor would not have purchased her Class Vehicle or would have paid less for it.

### 5.     Melissa Eisenhart

52.     Ms. Eisenhart is a citizen of Hawaii, residing in Kihei, Hawaii.

53.     In September 2017, Ms. Eisenhart purchased a certified pre-owned 2015 Dodge Grand Caravan SLE from Jim Falk Chrysler Dodge Jeep Ram, an authorized FCA dealership and repair center located in Kahului, Hawaii.

54.     Ms. Eisenhart purchased (and still owns) this vehicle, and uses for personal, family, and/or household purposes.

55.     In 2019, Ms. Eisenhart realized that the passenger sliding door was failing to lock, which also rendered the vehicle's alarm system inoperative.  Both doors will also change direction in the middle of opening and closing—an opening door will suddenly start closing, and a closing door will re-open.

56.     On July 28, 2021, Ms. Eisenhart returned the vehicle to Jim Falk Chrysler Jeep Dodge Ram to diagnose the problem. The dealership demanded $100 just to diagnose the needed repair, which is more than Ms. Eisenhart can afford. The service technician informed Ms. Eisenhart that electrical problems were not "covered under the warranty."

57.     Prior to purchasing the vehicle, Ms. Eisenhart was exposed to FCA's pervasive branding message and promotional materials, including TV

13

advertisements, FCA's website, sales brochures, and the window sticker. However, FCA did not disclose the Sliding Door Latch Defect.

58. Ms. Eisenhart has suffered an ascertainable loss as a result of FCA's omissions associated with the Sliding Door Latch Defect, including, but not limited to, the costs associated with having to repair the Sliding Door Latch Defect and future attempted repairs and diminished value of her vehicle.

59. Neither FCA, nor any of its agents, dealers, or other representatives informed Ms. Eisenhart of the existence of the Sliding Door Latch Defect prior to either her purchase of the vehicle, or when she presented the vehicle for repair.

60. Had FCA disclosed the Sliding Door Latch Defect, Ms. Eisenhart would not have purchased her Class Vehicle or would have paid less for it.

**B.  Defendant FCA**

61. Defendant FCA is a Michigan limited liability company, with its principal office located in Auburn Hills, Michigan. FCA designs, tests, manufactures, distributes, warrants, sells, and leases various vehicles under several prominent brand names, including Chrysler, Jeep, and Dodge in this District and throughout the United States. FCA manufactured the Class Vehicles at issue in this case.

## IV    <u>FACTUAL ALLEGATIONS</u>

62.    FCA launched its fifth-generation minivans in 2008, featuring the Dodge Grand Caravan and the Chrysler Town & Country.

63.    Like the Class Vehicles, the early production fifth generation FCA minivans suffered door latch system failure. Defendant began receiving owner complaints of door latch system failure as early as 2008.

64.    In June 2009, Defendant's predecessor filed for protection under the United States Bankruptcy Code.

65.    Defendant acquired all its predecessor's assets and liabilities, and continued manufacturing and selling vehicles under the Dodge and Chrysler brands.

66.    Like its predecessor, Defendant continued to manufacture model year 2010 and forward Class Vehicles with defective door latch systems without disclosing it to the public.

### A.    The Sliding Door Latch Defect

67.    The Dodge Caravan (and long-wheelbase Dodge Grand Caravan) is a minivan manufactured by FCA and sold across the United States. The Dodge Grand Caravan was first made available in as a 1984 model-year vehicle. As of 2020, FCA had discontinued the Dodge Grand Caravan model and replaced it with a similar model, the Chrysler Voyager.

15

68.     From 2008-2020, the Dodge Grand Caravan used the same design, manufacturing, and parts, including those parts involved in the Sliding Door Latch Defect. As a result of FCA's bankruptcy, however, the Class includes 2010-2020 Dodge Grand Caravan vehicles.

69.     The Chrysler Town & Country is an analogue minivan manufactured and marketed from 1990 forward. From 2008-2016, the Chrysler Town & Country used the same design, manufacturing, and parts, including those parts involved in the Sliding Door Latch Defect. Due to FCA's bankruptcy, however, the Class includes 2010-2016 Chrysler Town & Country vehicles.

70.     Powered door latches (also known as electronic door locks or central locking) allow the driver or front passenger to simultaneously lock or unlock all of the passenger doors of an automobile through use of an interior lock/unlock button or switch, an exterior manual locking mechanism, and/or a wireless key fob. Additionally, many modern vehicles are pre-programmed to utilize the electronic door latching system to engage safety features such as automatic locking of doors when a vehicle reaches a certain speed (per NHTSA regulations) and unlocking the doors if the vehicle is turned off or determined to have been in an accident.

71.     The components of the power sliding door latching system in the Class Vehicles include, *inter alia*, a door latch assembly, lock assembly electronic switches, a central communication brain, metal connecting rods, and linkages and

cables. In the Class Vehicles, the door latch assemblies mechanically lock and unlock the door latches, thereby allowing the doors to be open or closed, based upon electrical or mechanical commands. The pictures below illustrate the interior door components comprising the sliding door latch system in the Class Vehicles. Specifically, figure number "22" identifies the parts at issue.





72.     A door actuator is an electric motor that controls the latching, locking,

unlatching and unlocking of vehicle doors. When a button is pressed on the key fob

(or in the vehicle), a signal to latch/lock or unlatch/unlock the door is sent to the

Body Control Module (BCM) which, in turn, communicates with the sliding door

actuator. In some of the Class Vehicles, the lock actuator is mounted between the

lock cylinder and the lock and latch assembly. The actuator is essentially attached to

the lock linkage (a cable or rod) inside the door and responds to the signal from the

BCM to move the linkage back and forth, to lock and unlock. Many new Dodge

vehicles have the actuator built into the door latch assembly. The picture below illustrates the inside of a Class Vehicle door actuator.



73.     In the Class Vehicles, the sliding door fails to lock or unlock, either with the electronic controls or manually. Failure to lock or unlock the sliding door with electronic controls (or even manually) indicates that the actuator has failed. Normally, a slight clunking sound or whirring sound can be heard when the locks are activated. If the sound of the actuator becomes weak or excessively noisy, it is a sign that the actuator is under duress and possibly failing. Some Class members complain of a "buzzing" sound emitting from failing door lock actuators. In some cases, the lock may move partially, but not all the way. The picture below illustrates an actuator contained in the Class Vehicles.



74.     Furthermore, a failing lock actuator can be a symptom of a larger issue with the central locking system, including problems with the BCM or other components such as the connecting rods or latches.

75.     A fault within the BCM can disrupt various functions of the sliding door latch system, including door lock actuator operability. In the Class Vehicles, the opening and closing of the electrical circuit by the door sensor sends electrical signals to other components of the vehicle, including the BCM, to communicate that the rear passenger doors on the vehicle are either opened or closed. If a door sensor communicates that one of the passenger doors is partially closed the vehicle's interior dome light will continuously illuminate, the door chime will sound, the alarm system will not arm, and the "door ajar" indicator light, located in the instrument cluster, will illuminate. Additionally, the vehicle doors will not lock,

neither while the vehicle is parked nor while being driven. Furthermore, if this condition continues when the vehicle is turned off, it can completely drain the vehicle's battery and leave the vehicle operator and passengers stranded.

76.    The picture below illustrates that the sliding door latch assembly (including door sensor) communicates only with the BCM. The BCM is a major module that handles multiple tasks including, *inter alia*, lighting, climate control, keyless entry, anti-theft duties, and managing communications between other modules. The BCM then uses this erroneous message from the door sensor (when a faulty door ajar situation is created) and causes other inappropriate and unsafe functions to be carried out within the vehicle while in motion, *i.e.*, the interior dome light will continuously illuminate, the door chime will continuously sound, and the "door ajar" indicator light, located in the instrument cluster, will illuminate. //



77.     A fault within other sliding door latch system components, such as the connecting rods or latches, can disrupt various functions of the door latch system, including latch or lock operability. For example, connecting rods can be become displaced or misaligned, preventing actuation of the door locks or latches. Latches

can oxidize or corrode, causing partial latching and seizure of the doors. Partial latching invites unintended door opening and seizure can prevent doors from opening or closing altogether.

78. Power sliding door latch systems are designed to function for periods (and mileages) substantially in excess of those specified in FCA's warranties and, given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the door latch systems will fail for significantly longer than the limited times and mileages identified in FCA's warranties.

79. Automobiles must incorporate designs that are able to withstand foreseeable usage conditions such as opening and closing doors, as well as, locking and unlocking the doors electronically. A vehicle can suffer extensive damage and costly repairs from customary environmental and usage conditions when the vehicle contains a defect.

80. The Class Vehicles were manufactured with insufficient and defective sliding door latch systems, whose defects arise from non-robust lock actuators or related components. These defects render the Class Vehicles prone to door failure. Once the door locks cease operating properly, the door latch assemblies and door latching system fail to function as intended and expected and can result in further problems with the BCM or other components. As a result, the door latch assemblies, including the actuators, must be replaced. As explained above, the Sliding Door

Latch Defect poses serious safety and security issues for operators and occupants of the Class Vehicles.

81. In many instances, consumers have incurred and will continue to incur expenses for the continued repair and/or replacement of the defective door latch assemblies despite such defect having been contained in the Class Vehicles manufactured by FCA.

82. Many Class members, including Mr. Dobransky, have experienced repeat failure of the sliding door latch system, incurring even more expenses.

      **1.**     **The Sliding Door Latch Defect Is a Serious Safety Defect**

83. The Sliding Door Latch Defect poses a risk to occupant safety.

84. FCA markets the Class Vehicles as safe and reliable family vehicles. But because of the Sliding Door Latch Defect, the Class Vehicles are far from safe.

85. One failure mode of the Sliding Door Latch Defect involves the latch system failing in the locked position while the rear sliding doors are closed. When this happens, the doors cannot be unlocked manually or remotely, and the doors freeze in the closed position. This failure mode greatly increases the risk of occupant safety in emergency situations. Separately, if the latch system fails in the locked position while the rear sliding doors are open, the doors will bounce off the strikers and refuse to close.

86.     A second failure mode of the Sliding Door Latch Defect involves the latch system failing in the unlocked position. When this happens, the door cannot be locked either manually or remotely, and the door can be opened (by children) while the vehicle is in motion. This failure mode runs afoul of NHTSA's regulation requiring door's to automatically lock while the vehicle is in motion. *See* Federal Motor Vehicle Safety Standard 49 C.F.R. § 571.206, § 4.3.1. Moreover, the inability to lock the door increases the odds of uninvited entry.

87.     The safety risks attendant with each failure mode are multiplied if the latch system in both rear sliding doors fail.

88.     The following consumer complaints filed with NHTSA exemplify the seriousness of the Sliding Door Latch Defect. For example, on April 10, 2016, the owner of a 2010 Chrysler Town & Country filed the following complaint with NHTSA:

> THE DRIVER'S SIDE SLIDING DOOR DOES NOT RESPOND TO AUTOMATIC OR MANUAL RELEASE AND IN AN EMERGENCY IS INOPERABLE.THERE SEEMS TO BE NO SUGGESTION ON HOW TO OPEN THE SLIDING DOOR IN THE EVENT A PASSENGER MUST EXIT.[6]

89.     On March 19, 2019, the owner of a 2012 Dodge Grand Caravan filed the following complaint with NHTSA:

---

[6] NHTSA ID 10854620.

> DRIVER SIDE SLIDING DOOR STUCK IN LOCKED POSITION RENDERING DOOR UNUSABLE. 03/12/2019. CANNOT GET IT TO UNLOCK MANUALLY OR WITH FOB. PASSENGER SLIDING DOOR WILL NOT LOCK MANUALLY OR WITH FOB, RENDERING A SECURITY ISSUE. 01/01/2018. I CAN NEVER FULLY LOCK MY VAN. WE JUST RISKED IT UNTIL THIS DOOR WENT ON US. AFTER RESEARCH FOUND MANY PEOPLE STRUGGLING WITH THIS ISSUE.[7]

90.    On November 12, 2019, the owner of a 2012 Dodge Grand Caravan filed the following complaint with NHTSA:

> BOTH REAR PASSENGER SLIDING DOORS WILL NOT OPEN. THEY ARE UNLOCKED (USING BOTH THE FOB AND THE INTERIOR MANUAL LOCK/UNLOCK). THE VAN IS ALWAYS IN AN OFF/NOT RUNNING OR PARKED STATE WHEN ATTEMPTING TO OPEN DOORS. WHETHER USING THE FOB OR MANUAL DOOR HANDLE, THE DOORS MAKE A CLICKING SOUND AND ATTEMPT TO OPEN (JERKS AND MOVES A NEGLIGIBLE AMOUNT) BUT DOES NOT OPEN. THE DOORS CANNOT BE OPENED MANUALLY. I CARRY 2 SMALL CHILDREN AND ONLY 1 HAS THE ABILITY TO RELEASE HIMSELF FROM HIS CAR SEAT AND FIND A FRONT DOOR TO EXIT OUT OF. IN AN EMERGENCY THE 2 CHILDREN WOULD BE DIFFICULT TO EXTRICATE WITHOUT CLIMBING THROUGH AN OPEN BACK HATCH (IF ACCESSIBLE) OR OVER THE FRONT SEATS. THIS IS A KNOWN ISSUE. HTTPS://WWW.CARGURUS.COM/CARS/DISCUSSION-T41910_DS866499

---

[7] NHTSA ID 11190118.

HTTPS://WWW.CARGURUS.COM/CARS/DISCUSSI
ON-T41909_DS650359[8]

91.     On August 26, 2016, the owner of a 2014 Dodge Grand Caravan filed

the following complaint with NHTSA:

> REAR PASSENGER RIGHT SLIDING DOOR NON-
> FUNCTIONAL. DOOR CANNOT BE OPENED OR
> CLOSED. G-D FORBID THIS VEHICLE IS
> INVOLVED IN AN ACCIDENT, MY
> GRANDCHILDREN WILL NOT BE ABLE TO EXIT
> THE VEHICLE QUICKLY. I CONSIDER THIS A
> SAFETY ISSUE. CHRYSLER DOES NOT.[9]

92.     On December 23, 2017, the owner of a 2015 Chrysler Town and

Country filed the following complaint with NHTSA:

> RIGHT PASSANGER SLIDING DOOR DOES NOT
> LOCK WITH FOB NOR MANUALLY, THE
> PHYSICAL LOCK IS STUCK. DOOR CAN BE
> OPENED AND ALARM DOES NOT GO OFF.[10]

93.     On May 7, 2018, the owner of a 2016 Dodge Grand Caravan filed the

following complaint with NHTSA:

> PASSENGER REAR SLIDING DOOR IS STUCK IN
> THE UNLOCK POSITION. THE DOOR LOCK CAN
> NOT BE MOVED ELECTRONICALLY OR
> MANUALLY.[11]

---

[8] NHTSA ID 11279526.
[9] NHTSA ID 10898773.
[10] NHTSA ID 11056253.
[11] NHTSA ID 11092237.

94.     On December 16, 2019, the owner of 2016 Dodge Grand Caravan filed the following complaint with NHTSA:

> THE LOCK ON THE BACK PASSENGER SIDE DOOR IS MALFUNCTIONING AND MAKES AN AWFUL NOISE EVERY TIME IT LOCKS OR UNLOCKS. SOMETIMES IT DOESN¬T LOCK AT ALL OR WON¬T UNLOCK. THIS IS VERY DANGEROUS IF GOD FORBID THE CAR IS SUBMERGED (STUCK LOCKED) OR IF A CHILD OPENS THE DOOR WHILE MOVING (STUCK UNLOCKED). THIS IS A COMMON ISSUE WITH 2016 DODGE GRAND CARAVANS IF YOU SEARCH THE INTERNET.[12]

95.     These complaints represent a sampling of the hundreds of complaints filed with NHTSA.

96.     In fact, in response to complaints such as these, NHTSA acknowledged the seriousness of the Sliding Door Latch Defect and launched a formal inquiry in July 2021.

97.     A vehicle without a safe, reliable, and operational door is unfit for its ordinary and intended purpose. This is particularly true for the Class Vehicles, which were marketed and sold as safe and reliable family vehicles.

98.     The Sliding Door Latch Defect substantially impairs the use, value, and safety of the Class Vehicles and renders them substantially less drivable, safe, and useful.

---

[12] NHTSA ID 11289514.

99.     As a result of the Sliding Door Latch Defect, all Class Vehicles are unfit for the purpose of providing safe and reliable transportation.

### 2.     Defendant Has Known About the Sliding Door Latch Defect Since at Least 2008

100.    FCA, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from and to the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) door latch and door sensor failure in prior model years, (6) pre-sale durability testing, and (7) other various sources, was aware of the Sliding Door Latch Defect since at least 2008 but failed to notify customers about it, or provide any adequate remedy for it.

101.    Buyers, lessees, and other owners of the affected vehicles were without access to the information concealed by FCA as described herein, and therefore reasonably relied on FCA's representations and warranties regarding the quality, durability, and other material characteristics of their vehicles. Had these buyers and lessees known of the defect and the potential danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles than the amounts they actually paid or would not have purchased the vehicles. FCA is aware that many Class Vehicle owners experienced the Sliding Door Latch Defect failure. Instead, FCA seeks to burden Class members with its failure while also reaping the benefit of profits from costly repairs (and repeat repairs) paid for by Class members.

102.   FCA is, and has been, aware that the Sliding Door Latch Defect in the Class Vehicles exists. The rear sliding doors on each Class Vehicle each contain the same or substantially similar door latch system components.

103.   According to FCA, the Sliding Door Latch Defect manifests when either "one or both of the sliding door locks do not function and/or emit a loud buzzing noise during lock/unlock operation." But FCA will only provide repairs for Class Vehicles that fall under the general warranty period. FCA charges Class members for attempted and repeat repairs and parts to correct the Door Latch Defect.

104.   Moreover, since the part number has not changed since 2008, FCA is simply replacing one defective part with a new but equally defective part, causing Class members to experience repeat failures and repairs (at their own expense).

### a.   FCA's Knowledge Gained from Pre-Release Design, Manufacture, and Test Data

105.   Pre-release design, engineering, manufacturing, and testing of Class Vehicles provided FCA with comprehensive and exclusive knowledge about the Sliding Door Latch Defect, particularly the system's functions, uses and expected conditions it may face.

106.   FCA knew that electrical, mechanical, and linkage components, such as the door latch system and its components, required certain design and manufacturing characteristics to endure the circumstances to which they are exposed.

107.   An adequate pre-release analysis of the design, engineering, and manufacturing of the door latch system would have revealed it vulnerability.

108.   FCA performed such testing and analysis, but the results are unavailable to Plaintiffs without discovery.

### b.   FCA's Knowledge of the Defect Gained from Warranty, Repair, and Parts Sales Data

109.   FCA knew about the Sliding Door Latch Defect because of the large number of claims for Sliding Door Latch Defect repairs and purchase of door latch parts.

110.   Defendant collects, reviews, and analyzes detailed information about repairs made on vehicles in warranty at its dealerships or service centers, including the type and frequency of such repairs. Based off the spike in complaints once FCA launched its fifth generation of vehicles in 2008, FCA's warranty and repair data likely increased, too. However, the complete data on such repairs is exclusively in FCA's control and unavailable to Plaintiffs without discovery.

111.   Moreover, FCA collects, reviews, and monitors data on the number of parts sold, including the type and frequency of such parts. Based off the spike in complaints once the fifth generation launched in 2008, FCA's sale of replacement parts likely increased, too. However, the complete data on such sales is exclusively in FCA's control and unavailable to Plaintiffs without discovery.

###### c. FCA's Knowledge Gained from Voluminous NHTSA Complaints

112. Beginning with the launch of the fifth generation FCA minivans in 2008, online resources, such as NHTSA's publicly available customer complaint database, reveal a spike in complaints submitted to NHTSA regarding the Sliding Door Latch Defect.

113. Pursuant to the TREAD Act, 49 U.S.C. § 30118, FCA monitors customer complaints submitted to NHTSA.

114. By monitoring the NHTSA database, FCA learned that Class members started complaining of the Sliding Door Latch Defect, including its related safety consequences, in 2008.

115. For example, the following complaint was filed with NHTSA on October 1, 2008:

October 1, 2008 **NHTSA ID NUMBER: 10244086**
**Components: LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 10244086

**Incident Date** September 28, 2007

**Consumer Location** COLUMBUS, IN

**Vehicle Identification Number** 2D4GP24R95R\*\*\*\*

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

POWER LOCKS WON'T WORK FROM EITHER WITHIN VEHICLE OR BY THE REMOTE. JUST OVER 61,000 MILES ON VEHICLE. ONE TIME OWNER. *TR

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| DODGE | GRAND CARAVAN | 2008 |

116.   Similar complaints were filed in the following months:

**December 9, 2008 NHTSA ID NUMBER: 10251214**
**Components: LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 10251214

**Incident Date** September 30, 2008

**Consumer Location** Unknown

**Vehicle Identification Number** N/A

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
DODGE CARAVAN ALL THE DOOR LOCK STOP WORKING AND IS A VEHICLE SUBSTANDARD MANUFACTURING ISSUE. A SIMILAR PROBLEM WITH ALL OTHER VANS IS ALREADY REPORTED ON THE WEB AND POOR MANUFACTURING IS THE RESULT OF THIS ISSUE. IT IS NOT A WEAR AND TEAR AND IS AN ISSUE WHICH DODGE IS WELL AWARE OF IT AND HAS DONE NOTHING SO FAR. *TR

**1 Affected Product**

## Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| DODGE | GRAND CARAVAN | 2008 |

July 20, 2009 **NHTSA ID NUMBER: 10277443**
**Components: ELECTRICAL SYSTEM, LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 10277443

**Incident Date** March 4, 2008

**Consumer Location** MADISON, WI

**Vehicle Identification Number** 2D8HN54P38R****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
TL*THE CONTACT OWNS A 2008 DODGE GRAND CARAVAN. THE
CONTACT STATED THAT THE REMOTE SLIDING DOORS AND REAR
HATCH WOULD OPEN AT WILL WHEN THE KEY REMOTE WAS IN THE
HIS POCKET. HE TOOK THE VEHICLE TO THE DEALER, BUT THEY
WOULD NOT ASSIST. WHEN THE CONTACT WOULD BARELY TOUCH
THE REMOTE, THE DOORS WOULD OPEN. THE MANUFACTURER
WOULD ALSO NOT ASSIST. THE CURRENT MILEAGE WAS 9,884 AND
FAILURE MILEAGE WAS 6,029. UPDATED 09/04/09.*JB

**1 Affected Product**

## Vehicle

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| DODGE | GRAND CARAVAN | 2008 |

January 6, 2010 **NHTSA ID NUMBER: 10298429**
**Components: LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 10298429

**Incident Date** November 19, 2009

**Consumer Location** SHARON HILL, PA

**Vehicle Identification Number** 2A8HR54P38R****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
TL*THE CONTACT OWNS A 2008 CHRYSLER TOWN AND COUNTRY. THE RIGHT PASSENGER SLIDING DOOR OPENED AND CLOSED RANDOMLY. THE DOOR LATCH HAS ALSO MALFUNCTIONED. A LOCAL MECHANIC RESET THE COMPUTER AND STATED THAT THERE WAS NOTHING WRONG WITH THE VEHICLE. SHE PLANS TO HAVE THE VEHICLE DIAGNOSED BY AN AUTHORIZED DEALER AND NOTIFY THE MANUFACTURER. THE FAILURE MILEAGE WAS 37,000 AND THE CURRENT MILEAGE WAS 39,300.

**1 Affected Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| CHRYSLER | TOWN AND COUNTRY | 2008 |

117.   The number of early complaints is especially significant when compared to the one door latch system complaint for 2007 Dodge Grand Caravan and Chrysler Town & Country vehicles filed with NHTSA in the same time period.

118.   NHTSA's database includes hundreds of additional Sliding Door Latch Defect complaints. The vast majority of these complaints pre-date Plaintiffs' purchase of their respective Class Vehicles. These complaints reveal that the Sliding Door Latch Defect extends far beyond just the 2016 and 2017 model year vehicles that are the subject of FCA's technical service bulletins and NHTSA's preliminary investigation. These complaints demonstrate a consistent issue with the Class Vehicles' door latches and door latch actuators extending from model year 2010 through model year 2018 Class Vehicles, which are equipped with the same door latch system components.

119.   These complaints, registered on NHTSA's website, with the exception of the 476 complaints relating to model year 2016 Class Vehicles identified in NHTSA's Opening Resume of Preliminary Investigation, are set forth in Exhibit 1

to this Complaint.[13] A small representative sample of some complaints pre-dating the sales of Plaintiffs' vehicles is included below:

**April 23, 2014 NHTSA ID NUMBER: 10584504
Components: STRUCTURE**
**NHTSA ID Number:** 10584504

**Incident Date** July 17, 2013

**Consumer Location** NEWTON, NJ

**Vehicle Identification Number** 2C4RC1BGXDR****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
TL* THE CONTACT OWNS A 2013 CHRYSLER TOWN AND COUNTRY VAN. THE CONTACT STATED THE DRIVER'S SIDE SLIDING DOOR WOULD CONSTANTLY BECOME STUCK. THE VEHICLE WAS TAKEN TO THE DEALER, WHERE THE TECHNICIAN DIAGNOSED THAT THE DOOR LATCH NEEDED TO BE REPLACED. THE REPAIRS WERE MADE TO THE VEHICLE. THE MANUFACTURE WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 6,000 AND THE CURRENT MILEAGE WAS 14,000.

**1 Affected Product**
**Vehicle**

---

[13] These complaints are reproduced as they appear on NHTSA's website. Any typographical errors are attributable to the original author of the complaint.

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHRYSLER | TOWN AND COUNTRY | 2013 |

June 9, 2014 **NHTSA ID NUMBER: 10597074**
**Components: ELECTRICAL SYSTEM, STRUCTURE**
**NHTSA ID Number:** 10597074

**Incident Date** March 27, 2014

**Consumer Location** OCEANSIDE, NY

**Vehicle Identification Number** 2C4RC1CGXER****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

FROM AN HALF HOUR OF PICKING UP MY CAR AND GETTING IT HOME
I HAVE HAD A SEVERE SAFETY PROBLEM TO WHERE THE SLIDING
DOOR EITHER DOESN'T CLOSE ALL THE WAY OR IF IT DOES IT MAKES
A CLICKING NOISE AS IF TRY TO LATCH CLOSE. CALLED DEALER
RIGHT OF WAY BROUGHT IT BACK NEXT DAY SAID THE COMPUTER
FOR DOOR NEEDED TO BE UPDATED(REALLY BRAND NEW CAR)
WORKED WHILE I WAS THERE GOT HOME LATER THAT DAY
HAPPENED AGAIN DEALER LOOKED HAVE TO CHANGE MODULE
WAITED FOR PART TO COME GOT IT BACK STILL HAPPENING NOW
DEALER SAID LATCH NEEDED TO BE ADJUSTED SO THEY DID GOT IT
BACK STILL HAPPENING. GOT A CHRYSLER CASE MANAGER THEY
ARE DOING NOTHING ALL I ASKED WAS TO SWITCH CAR OUT SO
NONE OF MY KIDS FALL OUT AND GET HURT OR POSSIBLY DIE NO
ONE WANTS TO HELP STUCK WITH A DEFECTIVE VEHICLE FOR THE

NEXT 3 YEARS. NEVER AGAIN WILL I GET CHRYSLER OR
RECOMMEND ONE. HOPEFULLY NO ONE FALLS OUT OR THEY WILL
BE IN A LOT OF TROUBLE. *TR

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHRYSLER | TOWN AND COUNTRY | 2014 |

October 27, 2014 **NHTSA ID NUMBER: 10650220**
**Components: LATCHES/LOCKS/LINKAGES**
**NHTSA ID Number:** 10650220

**Incident Date** October 1, 2014

**Consumer Location** ANTIOCH, IL

**Vehicle Identification Number** 2C4RDGCG3DR****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
TL* THE CONTACT OWNS A 2013 DODGE GRAND CARAVAN. THE
CONTACT STATED THAT THE REAR PASSENGER SIDE DOOR FAILED
TO LATCH. THE FAILURE OCCURRED TWICE. THE VEHICLE WAS NOT
DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF
THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 42,000.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| DODGE | GRAND CARAVAN | 2013 |

May 28, 2015 **NHTSA ID NUMBER: 10722023**
**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 10722023

**Incident Date** March 18, 2015

**Consumer Location** BRUNSWICK, OH

**Vehicle Identification Number** 2C4RDGBG2DR****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

THE DOOR LOCKS STOPPED WORKING FOR BOTH THE LOCK BUTTON AND THE KEY FOB. THIS BECOMES A SAFETY ISSUE BECAUSE THE SIDE DOORS CAN BE LOCKED MANUALLY, BUT THE LIFT GATE DOES NOT HAVE A MANUAL LOCK. ADDITIONALLY ONLINE RESEARCH SHOWS THAT THE TIPM FAILURE CAN CAUSE CATASTROPHIC EVENTS SUCH AS SUDDEN AIRBAG DEPLOYMENT FOR NO REASON, FAILURE TO START, STALLING WHILE DRIVING, ETC.!! CHRYSLER IS SAID TO BE WELL AWARE OF THIS ISSUE AND HAS YET TO INITIATE A RECALL AND WE WERE PLANNING ON A FLORIDA VACATION THIS YEAR (WE LIVE IN OHIO) AND DUE TO THE POSSIBILITY OF GETTING STUCK ON OUR WAY OR ONCE THERE, WE DECIDED NOT TO GO TO THE DISMAY OF OUR KIDS. FIX THIS PROBLEM CHRYSLER AND QUIT SCREWING YOUR CUSTOMERS!!!

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| DODGE | GRAND CARAVAN | 2013 |

September 21, 2015 **NHTSA ID NUMBER: 10763639**
**Components: ELECTRICAL SYSTEM, LATCHES/LOCKS/LINKAGES**

**NHTSA ID Number:** 10763639

**Incident Date** August 16, 2015

**Consumer Location** MOREHEAD, KY

**Vehicle Identification Number** 2C4RDGCG9DR****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

2013 DODGE GRAND CARAVAN. CONSUMER WRITES IN REGARDS TO DOOR LOCK ACTUATOR FAILED ON THE PASSENGER SIDE SLIDING DOOR. *SMD THE CONSUMER STATED THE DOOR ACTUATOR FAILURE, CAUSED THE BATTERY TO DRAIN AND WAS DAMAGED TO THE POINT, WHERE IT HAD TO BE REPLACED. *JB

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| DODGE | GRAND CARAVAN | 2013 |

December 12, 2015 **NHTSA ID NUMBER: 10809794**

**Components: STRUCTURE**
**NHTSA ID Number:** 10809794

**Incident Date** November 27, 2015

**Consumer Location** DEXTER, MO

**Vehicle Identification Number** 2C4RC18G7ER****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0
DRIVERS SIDE SLIDING DOOR OPENS UNEXPECTEDLY WHEN CAR IS
PARKED. TOOK TO DEALER AND THEY SAID IT WAS IN THE
COMPUTER SYSTEM. A BAD LATCH THAT NEEDED REPLACEMENT.
SINCE THIS HAPPENS IS IT NOT CONSIDERED A SAFETY HAZARD.
ONLY HAD THE VEHICLE 4 MONTHS AND HAS BEEN DOING THIS FOR
THREE WEEKS. WHILE SHOPPING, PARKED IN THE GARAGE, JUST
WHENEVER THE CAR IS IN PARK.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHRYSLER | TOWN AND COUNTRY | 2014 |

April 11, 2016 **NHTSA ID NUMBER: 10854752**
**Components: STRUCTURE**
**NHTSA ID Number:** 10854752

**Incident Date** March 18, 2016

**Consumer Location** SUMMERVILLE, SC

**Vehicle Identification Number** 2C4RDGBG5DR****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

MANUALLY OPERATED SLIDING DOOR WILL NOT UNLOCK MAKING THE DOOR UNABLE TO BE OPENED. HOWEVER DRIVING DOWN THE HIGHWAY THE DOOR WILL OPEN ON ITS OWN. ONLY THE SAFETY LATCH KEEPS THE DOOR FROM OPENING ALL THE WAY. I CALLED DETROIT (800-423-6343 REP KAREN) AND REPORTED THE PROBLEM. SHE HAD ME CALL THE DEALER TO MAKE AN APPOINTMENT TO HAVE IT LOOKED AT. AS THE CAR IS JUST OUT OF WARRANTY, REPAIRS MAY OR MAY NOT BE COVERED.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| DODGE | CARAVAN | 2013 |

120.  Not only did FCA learn of the Sliding Door Latch Defect from monitoring NHTSA complaints, but based off the language of many complaints, FCA was contacted directly about the customers' experiences.

### d.    FCA's Knowledge Based on Its Technical Service Bulletins and NHTSA's Investigation

#### i.    August 10, 2016 Technical Service Bulletin 10177524

121.   On August 10, 2016, FCA first acknowledged the Sliding Door Latch Defect, model numbers 68030378A$ (left door) and 68030379A$ (right door), and the Sliding Door Actuator Module on its 2016 and 2017 Dodge Grand Caravan and Chrysler Town & County. This secret communication from FCA to its dealers instructs that when the dealers receive reports of an intermittent issue or complaint that the sliding door does not power open or close, they should first inspect the Sliding Door Actuator Module and latch for fretting and oxidation corrosion at connections, prior to replacing any parts. Dealers were instructed that "If concerns are found with the Module, then replace the Sliding Door Actuator Module. Otherwise replace the Sliding Door Latch."

122.   FCA instructed its dealers to provide feedback related to this service bulletin.

123.   FCA did not instruct its dealers to perform the necessary repairs at FCA's expense, nor did it provide for any additional time under the new vehicle limited warranty to have the problem addressed at no cost to the vehicle owner. Moreover, the TSB simply instructs the dealers to replace one defective part with an equally defective part, as the part number has not changed since 2008.

124. TSBs are not developed and published overnight. They require extensive investigation, analysis, and countermeasure development and testing before they are published. Therefore, FCA's knowledge must reasonably predate the issuance of this TSB.

### ii. June 4, 2020 Technical Service Bulletin 23-017-250

125. Nearly four years later, on June 4, 2020, FCA issued a second TSB, number 23-017-20, in an attempt to quietly address continuing issues with non-functioning locks on a subset of the Class Vehicles' sliding doors still being reported on the Chrysler Town & County and Dodge Grand Caravan.

126. This technical service bulletin called for the replacement of the sliding door lock actuator, part number 05020678AC (right door) and 0502679AC (left door), on its model year 2016 and 2017 Dodge Grand Caravan and Chrysler Town & County.

127. The TSB was limited to vehicles built from November 1, 2015, to June 30, 2017, and FCA did not instruct its dealers to perform the necessary repairs at FCA's expense, nor did it provide for any additional time under the new vehicle limited warranty to have the problem addressed at no cost to the vehicle owner. Moreover, the TSB simply instructs the dealers to replace one defective part with an equally defective part, as the part number has not changed since 2008.

### iii.    Investigation by NHTSA

128.   In July 2021, NHTSA opened a Defects Investigation (PE 21-016) after receiving 476 consumer complaints alleging defects on one or both of the sliding doors on the 2016 Dodge Grand Caravan and Chrysler Town & Country. The complaints describe consumers having to remove passengers in the rear of the vehicle through the front doors, the operable side door (if applicable), and even through windows in some cases. NHTSA expressed the concern of the complainants that "in the event of an emergency or crash, if the sliding door(s) cannot be opened, it could trap passengers or delay their egress."

129.   FCA's acts and omissions have unnecessarily put the safety of Class Members and the public in jeopardy. The Sliding Door Latch Defect causes a safety event that can directly injure passengers or create fear and surprise.

130.   Further, because of FCA's unfair, deceptive, and/or fraudulent business practices, owners, and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. FCA undertook these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

131.   Had FCA disclosed the Sliding Door Latch Defect at the time of purchase or lease, Plaintiffs would not have bought or leased their Class Vehicles or would have paid substantially less for them.

132.   As a result of the Sliding Door Latch Defect and the monetary costs associated with attempting to repair it, FCA and the other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by FCA's conduct. Accordingly, Plaintiffs bring this action to redress FCA's violations of various consumer protection statutes, and also seek recovery for FCA's breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and fraudulent concealment.

**B.     FCA Touted the Class Vehicles as Safe and Reliable Family Vehicles while Omitting the Sliding Door Latch Defect**

133.   FCA knowingly markets and sold/leased the Class Vehicles with the Sliding Door Latch Defect, while willfully omitting and concealing the true inferior quality and substandard performance of the Class Vehicles' door latch systems.

134.   FCA directly markets, for its benefit, the Class Vehicles to consumers via extensive nationwide multimedia advertising campaigns on television, the internet, billboards, print, mailings, social media, and other mass media, which impart a universal and pervasive marketing message: safe and reliable family vehicles.

135.   For example, in the sales brochure for the 2010 Dodge Grand Caravan, FCA appealed to families. FCA stated "When you start looking at the ideal family transportation, this is where the very concept began — and this is where your search

ends." The sales brochure is inundated with pictures depicting families and road trips, and states "This Is A Safety Zone."[14]



---

[14] Exhibit 6, https://www.auto-brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2010.pdf





49



136.   FCA made similar representations for the 2011-2020 Dodge Grand

Caravan vehicles.[15] For example, in the 2015 Dodge Grand Caravan sales brochure,

---

[15] Exhibit 7, **2011:** https://www.auto-
brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2
011.pdf; Exhibit 8, **2012:** https://www.auto-
brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2
012.pdf; Exhibit 9, **2013:** https://www.auto-
brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2
013.pdf; Exhibit 10, **2014:** https://www.auto-
brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2
014.pdf; Exhibit 11, **2016:** https://www.auto-
brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2
016.pdf; Exhibit 12, **2017:** https://www.auto-
brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2
017.pdf; Exhibit 13, **2018:** https://www.auto-
brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2
018.pdf; Exhibit 14, **2019:** https://www.auto-

FCA stated "it holds the confidence of families, their hobbies and their livelihoods," and the sales brochure is full from cover-to-cover with pictures depicting families and road trips:[16]



---

brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2019.pdf

[16] Exhibit 15, https://www.auto-brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20GrandCaravan_2015-1.pdf







137.   FCA made similar representations for the Chrysler Town & Country vehicles. For example, the 2012 Chrysler Town & Country sales brochure is filled with images and messages depicting families and road trips and claims to "meet your security standard."[17]

---

[17] Exhibit 16, https://www.auto-brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2012.pdf



138.   FCA made similar representations for other model year Chrysler Town & Country Class Vehicles.[18]

---

[18] Exhibit 17, **2010:** https://www.auto-brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2010.pdf; Exhibit 18, **2011:** https://www.auto-brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2011.pdf; Exhibit 19, **2013:** https://www.auto-brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2013.pdf; Exhibit 20, **2014:** https://www.auto-brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2014-2.pdf; Exhibit 21, **2015:** https://www.auto-brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2015.pdf; Exhibit 22, **2016:** https://www.auto-

139.   The above examples are a representative sampling of FCA's branding and marketing of the Class Vehicles.

140.   FCA not only marketed the Class Vehicles as safe and reliable family vehicles; FCA has been pervasively branding its minivans the same for years.

141.   For example, in the sales brochure for the 1999 Dodge Caravan, FCA stated it is "Still the best. You've got things to do, places to go, and people to see. You're the active person we thought of when we created the latest refinement of automotive original that continues to outsell its many rivals. . . . We made that room easy to get to by including standard second sliding door on the driver's side . . . ."[19]

142.   In the sales brochure for the 2001 Dodge Grand Caravan, FCA states that "Based on rigorous and extensive comparative testing, Dodge Grand Caravan clearly demonstrated the superiority to make it the Best Minivan Ever. . . . Long honored among the most versatile, practical and reliable vehicles to grace America's highways and driveways."

---

brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2016.pdf

[19] Exhibit 23, https://www.auto-brochures.com/makes/Dodge/Grand%20Caravan/Dodge_US%20Caravan_1999.pdf

143.   In the sales brochure for the 2004 Chrysler Town & Country, FCA stated "You want the best for your family. We want the best for your family. The most awarded minivan on earth. Town & Country."[20]

144.   In the sales brochure for the 2007 Chrysler Town & Country, FCA stated that "Town & Country brings together spaciousness, style, and safety so you and your passengers or cargo can look great on the road, and feel safe while you're there. . . . Town & Country was designed and engineered with your family in mind to help make every trip as secure as possible."[21]

145.   The above are just examples of FCA's long-term and pervasive marketing and branding efforts for its minivans and the Class Vehicles.

146.   Though FCA markets the Class Vehicles as safe and reliable family vehicles, in practice, the Class Vehicles fail to meet that promise. Instead, FCA omits that the Class Vehicles suffer from the Sliding Door Latch Defect, which places occupants in harm's way. FCA has never disclosed the Sliding Door Latch Defect to Plaintiffs or the other Class members.

---

[20] Exhibit 24, https://www.auto-brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2004.pdf
[21] Exhibit 25, https://www.auto-brochures.com/makes/Chrysler/Town%20&%20Country/Chrysler_US%20Town&Country_2007.pdf

147. Plaintiffs and the other Class members were exposed to FCA's pervasive and long terms marketing campaign touting the supposed quality and reliability of the Class Vehicles, and Plaintiffs and the other Class members justifiably made their decisions to purchase or lease their Class Vehicles based on FCA's misleading marketing that omitted the Sliding Door Latch Defect.

148. FCA has actively concealed the Sliding Door Latch Defect since at least 2008 despite its pervasive knowledge. Specifically, FCA has:

    a. Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Sliding Door Latch Defect;

    b. Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' door latch systems were defective and not fit for their intended purposes;

    c. Failed to disclose, and actively concealed, the fact that the Class Vehicles' door latch systems were defective, despite that FCA learned of the Sliding Door Latch Defect as early as 2008, and certainly well before Plaintiffs and Class members purchased or leased their Class Vehicles; and

    d. Failed to disclose, and actively concealed, the existence and pervasiveness of the Sliding Door Latch Defect even when Class members

directly asked about it during communications with FCA, FCA dealerships, and FCA service centers.

## C.   FCA's Warranties

149.   FCA has issued a Limited Vehicle Warranty for the class vehicles. Under the Limited Vehicle Warranty, FCA agreed to repair defects reported on the Class Vehicles within the earlier of 3 years or 36,000 miles. Repairs associated with the Sliding Door Latch Defect are included in this warranty.

150.   FCA instructs vehicle owners and lessees to bring their vehicles to a certified dealership for the warranty repairs. Many owners and lessees have presented Class Vehicles to FCA-certified dealerships with complaints related to the Sliding Door Latch Defect.

151.   FCA has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective and (2) refusing to perform repairs to correct the Sliding Door Latch Defect.

152.   Moreover, if/when FCA repaired vehicles, it simply replaced one defective part with another defective part. This is confirmed by the fact the relevant part numbers have not changed since 2008.

153.   FCA had notice of the Sliding Door Latch Defect based on its actual and exclusive knowledge, as alleged herein.

154.   Moreover, FCA's failure to cure the Sliding Door Latch Defect makes any notice requirement futile.

## V   TOLLING OF STATUTES OF LIMITATIONS

155.   FCA's knowing and active concealment and denial of the facts alleged herein act to toll any applicable statute(s) of limitations. Plaintiffs and other Class members could not have reasonably discovered the true, latent nature of the Sliding Door Latch Defect until shortly before commencing this class-action litigation.

156.   In addition, even after Plaintiffs and other Class members contacted FCA and/or its authorized dealers to repair the Sliding Door Latch Defect, FCA and/or its dealers repeatedly and consistently told them the Class Vehicles were not defective.

157.   FCA has had, and continues to have, a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles, including the facts that the Class Vehicles require costly repairs, pose safety concerns, and have a diminished resale value. As a result of FCA's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VI   CLASS ACTION ALLEGATIONS

158.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following class:

**The Nationwide Class:**
All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

159.   Alternatively, Plaintiffs propose the following state-specific sub-classes:

**The Florida Class:**
All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle.

**The Hawaii Class:**
All persons or entities in Hawaii who are current or former owners and/or lessees of a Class Vehicle.

**The Maine Class:**
All persons or entities in Maine who are current or former owners and/or lessees of a Class Vehicle.

**The Pennsylvania Class:**
All persons or entities in Pennsylvania who are current or former owners and/or lessees of a Class Vehicle.

**The Virginia Class:**
All persons or entities in Virginia who are current or former owners and/or lessees of a Class Vehicle.

160.   Excluded from the Classes are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definition.

161.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

162.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

163.   **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe that hundreds of thousands of Class Vehicles were sold across the United States. The number and identity of Class members can be obtained through business records regularly maintained by Defendant, its employees and agents, and state agencies. Members of the Class can be notified of the pending action by e-mail and mail, supplemented by published notice, if necessary.

164.   **Commonality and Predominance (Federal Rule of Civil Procedure 23(a)(2))** – There are questions of law and fact common to the Class. These questions predominate over any questions only affecting individual Class members. The common legal and factual issues include, but are not limited to:

      a.    whether Defendant engaged in the conduct alleged herein;

      b.    whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c.      whether  Defendant  designed,  manufactured,  marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States knowing the door latching system was prone to malfunction;

d.      when Defendant learned of the Sliding Door Latch Defect;

e.      Whether Defendant concealed the Sliding Door Latch Defect from consumers;

f.      whether Plaintiffs and other Class members have been harmed by the fraud alleged herein;

g.      whether Defendant was unjustly enriched by its deceptive practices;

h.      whether Plaintiffs and members of the Class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

165.  **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiffs' claims are typical of the claims of each member of the Class. Plaintiffs, like all other members of the Class, have sustained damages arising from FCA's conduct as alleged herein. Plaintiffs and the members of the Class were and are similarly or identically harmed by FCA's unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct.

166. **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiffs will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between Plaintiffs' claims and those of the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

167. **Superiority (Federal Rule of Civil Procedure 23(b)(3))** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents

a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

168. Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

## VII CAUSES OF ACTION

### A. Claims Brought on Behalf of the Nationwide Class

### COUNT I

### VIOLATIONS OF THE MAGNUSSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (By All Plaintiffs on behalf of the National Class
### and/or, alternatively, the State Subclasses)

169. Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth at length herein.

170. Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the State subclasses.

171.   Plaintiffs and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

172.   FCA is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

173.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

174.   FCA's 3 year/36,000 miles Limited Basic Warranty is a "written warranties" within the meaning of 15 U.S.C. § 2301(6).

175.   FCA breached the express warranties by:

a.      selling and leasing Class Vehicles with suspensions/steering linkage system that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

b.      refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the suspension or any of its component parts in order to remedy the Sliding Door Latch Defect.

176.   Plaintiffs and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

177.   FCA's breach of the express warranties has deprived Plaintiffs and the other Class members of the benefit of their bargain.

178.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

179.   FCA has been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and the other Class members were not required to do so because affording FCA a reasonable opportunity to cure their breach of written warranties would have been futile. FCA was also on notice of the alleged defect from the complaints and service requests it received from Class members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

180.   As a direct and proximate cause of FCA's breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be determined at trial. FCA's conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**B.      Claims Brought on Behalf of the Florida Class**

## COUNT II

### VIOLATION OF UNFAIR & DECEPTIVE TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, *et seq.*)
### (By Plaintiff Mayor on behalf of the Florida Subclass)

181.   Plaintiff Mayor ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

182.   FCA's conduct as set forth herein constitutes unfair or deceptive acts or practices, based on its concealment of the Sliding Door Latch Defect, and its misrepresentations and omissions regarding the safety and reliability of the Class Vehicles.

183.   FCA's actions as set forth above occurred in the conduct of trade or commerce.

184.   FCA's actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing and/or leasing FCA vehicles as a result of FCA's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of FCA's business.

185.   Plaintiff and the Class were injured as a result of FCA's conduct. Plaintiff and the Class overpaid for the Class Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

186.   FCA's conduct proximately caused the injuries to Plaintiff and the Class.

187.   FCA is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

188.   Pursuant to Fla. Stat. § 501.201, Plaintiff will serve the Florida Attorney General with a copy of this complaint as Plaintiff seeks injunctive relief.

**COUNT III**

**BREACH OF EXPRESS WARRANTY**
**(Fla. Stat. § 672.313)**
**(By Plaintiff Mayor on behalf of the Florida Subclass)**

189.   Plaintiff Mayor ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

190.   FCA is and was at all relevant times a merchant with respect to motor vehicles. In the course of selling vehicles, FCA expressly warranted in writing that the Class Vehicles were covered by a Basic Warranty.

191.   FCA breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part FCA supplied. FCA has not repaired or adjusted, and has been unable to repair or adjust, the Vehicles' materials and workmanship defects.

192.   In addition to its Basic Warranty, FCA expressly warranted several attributes, characteristics, and qualities, as set forth above.

193.   These warranties are only a sampling of the numerous warranties FCA has extended relating to safety, reliability and operation, which are more fully outlined in Section IV. C., *supra*. Generally, these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards. These warranties were made, *inter alia*, in advertisements and in uniform statements FCA provided to salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

194.   These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged and a recall "fix" was announced), nor did they comply with the warranties expressly made to purchasers or lessees. FCA did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

195.   Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the Class whole and because FCA has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

69

196.   Accordingly, Plaintiff's recovery is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

197.   At the time that FCA warranted and sold the Class Vehicles it knew they did not conform to the warranties and were inherently defective, and FCA wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles.

198.   Plaintiff and the Class were therefore induced to purchase the Class Vehicles under false pretenses.

199.   Moreover, many of the damages flowing from the defect cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to FCA's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the Class's remedies would be insufficient to make Plaintiff and the Class whole.

200.   Finally, due to the FCA's breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in Fla. Stat. § 672-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all vehicles currently owned.

201.   FCA was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and the Class before or within a reasonable amount of time after FCA issued the recall and the allegations of vehicle defects became public.

202.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT IV

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Fla. Stat. § 672.314)
### (By Plaintiff Mayor on behalf of the Florida Subclass)

203.   Plaintiff Mayor ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

204.   FCA is and was at all relevant times a merchant with respect to motor vehicles.

205.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to Fla. Stat. § 672.316.

206.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective as a result of the Sliding Door Latch Defect.

207. FCA was provided notice of these issues by numerous complaints made against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and the Class before or within a reasonable amount of time after FCA issued the recall and the allegations of vehicle defects became public.

208. Plaintiff and the Class have had sufficient dealings with either FCA or its agents (dealerships) to establish privity of contract between Plaintiff and the Class. Notwithstanding this, privity is not required in this case because Plaintiff and the Class are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defect.

209. As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT V

**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Under Florida Law)**
**(By Plaintiff Mayor on behalf of the Florida Subclass)**

210.   Plaintiff Mayor ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

211.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law. FCA limited the remedies available to Plaintiff and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by FCA, and/or warranted the quality or nature of those services to Plaintiff.

212.   FCA breached this warranty or contract obligation by failing to repair or replace the Class Vehicles as a result of the Sliding Door Latch Defect.

213.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI

## FRAUD BY CONCEALMENT
### (Under Florida Law)
### (By Plaintiff Mayor on behalf of the Florida Subclass)

214.   Plaintiff Mayor ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

215.   FCA had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of FCA's highest corporate priorities. Once FCA made representations to the public about the Class Vehicles' safety and reliability, FCA was required to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

216.   In addition, FCA had a duty to disclose these omitted material facts because they were known and/or accessible only to FCA, and FCA knew they were not known to or reasonably discoverable by Plaintiff and the Class. These omitted facts were material because they directly impact the safety of the Class Vehicles. Whether or not a vehicle will lock or not, or be opened on command, are material safety concerns. FCA possessed exclusive knowledge of the defects rendering the Class Vehicles inherently more dangerous and unreliable than similar vehicles.

217.   FCA actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Class to purchase Class Vehicles at a higher price, which did not match their true value.

218.   FCA still has not made full and adequate disclosure and continues to defraud Plaintiff and the Class.

219.   Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

220.   Plaintiff and the Class sustained damage resulting from FCA's concealment and/or suppression of material facts. For those who elect to affirm the sale, these damages, include the difference between the actual value of that which they paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those who want to rescind the purchase, those individuals are entitled to restitution and consequential damages.

221.   FCA's acts were malicious, oppressive, deliberate, and done with intent to defraud, and in reckless disregard of the rights of Plaintiff and the Class. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII

**UNJUST ENRICHMENT**
**(Under Florida Law)**
**(By Plaintiff Mayor on behalf of the Florida Subclass)**

222.   Plaintiff Mayor ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

223.   FCA knew about the Sliding Door Latch Defect and failed to disclose the defect to Plaintiff and the Class.

224.   As a result of their wrongful and fraudulent acts and omissions, as set forth above, FCA charged a higher price for the Class Vehicles than their true value and thus obtained monies rightfully belonging to Plaintiff and the Class.

225.   FCA appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the Class, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for FCA to retain these wrongfully obtained profits.

226.   Plaintiff is thus entitled to restitution and seeks an order establishing FCA as constructive trustees of these unjustly obtained profits, including interest.

**C.**     **Claims Brought on Behalf of the Hawaii Class**

## COUNT VIII

**UNFAIR COMPETITION AND PRACTICES**
**(Haw. Rev. Stat. § 480, *et seq.*)**
**(By Plaintiff Eisenhart on behalf of the Hawaii Subclass)**

227.   Plaintiff Eisenhart ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

228.   Hawaii's Revised Statute § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

229.   FCA's conduct as set forth herein constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-2, because FCA's acts and practices, including the manufacture and sale of vehicles with the Sliding Door Latch Defect, and FCA's misrepresentations and omissions regarding the safety and reliability of the Class Vehicles, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices.

230.   FCA's conduct has also impaired competition within the market for comparable vehicles by preventing Plaintiff and the Class from making fully informed decisions about whether to purchase or lease the Class Vehicles, and/or the price to be paid to purchase or lease the Class Vehicles.

231.   FCA's misrepresentations and omissions regarding the safety and reliability of its Class Vehicles were material and caused Plaintiff to purchase or lease vehicles they would not have otherwise purchased or leased, or paid as much for, had Plaintiff and the Class members known the vehicles were defective.

232.   FCA's acts or practices as set forth above occurred in the conduct of trade or commerce.

233.   Plaintiff and the Class have suffered injury, including the loss of money or property, as a result of FCA's unfair methods of competition and unfair or deceptive acts or practices.

234.   983. In addition to damages in amounts to be proven at trial, Plaintiff and the Class seek attorneys' fees, costs of suit and treble damages.

235.   Plaintiff and the Class also seek injunctive relief to enjoin FCA from continuing its unfair competition and unfair or deceptive acts or practices.

## COUNT IX

### VIOLATION OF HAWAII'S UNIFORM DECEPTIVE TRADE PRACTICE ACT
### (Haw. Rev. Stat. § 481A, *et seq.*)
### (By Plaintiff Eisenhart on behalf of the Hawaii Subclass)

236.   Plaintiff Eisenhart ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

237.   FCA participated in unfair or deceptive acts or practices that violated the Uniform Deceptive Trade Practice Act ("UDAP"), Haw. Rev. Stat. § 481A, *et seq.*, as described herein.

238.   By failing to disclose and actively concealing the Sliding Door Latch Defect, FCA engaged in deceptive business practices prohibited by the UDAP, Haw. Rev. Stat. § 481A, *et seq*., including (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not and (3) advertising the Class Vehicles with the intent not to sell them as advertised.

239.   As alleged above, FCA made numerous false and misleading material statements about the safety and reliability of the Class Vehicles. Each of these statements contributed to the deceptive context of FCA's unlawful advertising and representations as a whole.

240.   FCA knew that the Class Vehicles were defectively designed or manufactured, would fail without warning, and were not suitable for its intended use. FCA nevertheless failed to warn Plaintiff about these inherent dangers despite having a duty to do so.

241.   FCA owed Plaintiff and the Class a duty to disclose the defective nature of the Class Vehicles because it:

      a.     possessed exclusive knowledge of the defect, which rendered the Class Vehicles inherently more dangerous and unreliable than similar vehicles;

      b.     intentionally concealed the hazards of the Class Vehicles through its deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from Plaintiff; and/or

      c.     made incomplete representations about the safety and reliability of the Class Vehicles generally.

242.   The Class Vehicles pose an unreasonable risk of death or serious bodily injury to Plaintiff, members of the Class, Class Vehicle drivers, and passengers.

243.   Whether the door locks operate is a matter that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

244.   When Plaintiff bought a Class Vehicle for personal, family, or household purposes, she reasonably expected the vehicle would have operable doors and locks as FCA represented at the time of sale.

245.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Class Vehicles.

246.   As a result of its violations of the UDAP detailed above, FCA caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff.

247.   Plaintiff currently owns or leases, or within the class period has owned or leased, the defective and unsafe Class Vehicles.

248.   Plaintiff risks irreparable injury as a result of FCA's unlawful acts and omissions, and these violations present a continuing risk to Plaintiff and the general public.

249.   Plaintiff seeks monetary damages and an order enjoining FCA's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorneys' fees and any other just and proper relief available.

## COUNT X

### BREACH OF EXPRESS WARRANTY
### (Haw. Rev. Stat. § 490:2-313)
### (By Plaintiff Eisenhart on behalf of the Hawaii Subclass)

250.   Plaintiff Eisenhart ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

251.   FCA is and was at all relevant times a merchant with respect to motor vehicles.

252.   In the course of selling its vehicles, FCA expressly warranted in writing that the Class Vehicles were covered by a Basic Warranty.

253.   FCA breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part FCA supplied. FCA has not

repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

254. In addition to this Basic Warranty, FCA expressly warranted several attributes, characteristics and qualities, as set forth above.

255. These warranties are only a sampling of the numerous warranties that FCA made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally, these express warranties promise heightened, superior, and state-of-the-art safety and reliability. These warranties were made, *inter alia*, in advertisements and in uniform statements FCA provided to salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

256. These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable (and remained so even after the problems were acknowledged and a recall "fix" was announced), nor did they comply with the warranties expressly made to purchasers or lessees. FCA did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

257. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the Class whole and because FCA has failed

and/or has refused to adequately provide the promised remedies within a reasonable time.

258.   Accordingly, Plaintiff's recovery is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

259.   Also, as alleged in more detail herein, at the time FCA warranted and sold the vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and FCA wrongfully and fraudulently misrepresented and/or concealed material facts about the Class Vehicles.

260.   Plaintiff and the Class were therefore induced to purchase the vehicles under false and/or fraudulent pretenses.

261.   Moreover, many of the damages flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to FCA's fraudulent conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the Class's remedies would be insufficient to make Plaintiff and the Class whole.

262.   Finally, due to FCA's breach of warranties, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in Haw. Rev. Stat.

§ 490:2-608, a revocation of acceptance of the goods, and for a return to Plaintiff and the Class of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed under Hawaii law.

263.   FCA was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and the Class before or within a reasonable amount of time after allegations of vehicle defects became public.

264.   As a direct and proximate result of FCA's breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT XI

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Haw. Rev. Stat. § 490:2-314)
### (By Plaintiff Eisenhart on behalf of the Hawaii Subclass)

265.   Plaintiff Eisenhart ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

266.   FCA is and was at all relevant times a merchant with respect to motor vehicles.

267.   A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transactions.

268.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

used. Specifically, the Class Vehicles are inherently defective because of the Sliding Door Latch Defect.

269.   FCA was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and the Class before or within a reasonable amount of time after allegations about the Sliding Door Latch Defect became public.

270.   Privity is not required in this case because Plaintiff and the Class members are intended third-party beneficiaries of contracts between FCA and its dealers; specifically, they are the intended beneficiaries of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers.

271.   As a direct and proximate result of FCA's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT XII

## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Under Hawaii Law)
### (By Plaintiff Eisenhart on behalf of the Hawaii Subclass)

272.   Plaintiff Eisenhart ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

273.   To the extent FCA's repair or adjust commitment is deemed not to be a warranty under Hawaii's Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law. FCA limited the remedies available to Plaintiff and the Class to just repairs and adjustments needed to correct defects in materials or workmanship of any part FCA supplied, and/or warranted the quality or nature of those services to Plaintiff.

274.   FCA breached this warranty or contract obligation by failing to repair or replace the Class Vehicles.

275.   As a direct and proximate result of FCA's breach of contract or common law warranty, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT XIII

### UNJUST ENRICHMENT
### (Under Hawaii Law)
### (By Plaintiff Eisenhart on behalf of the Hawaii Subclass)

276.   Plaintiff Eisenhart ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

277.   As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, FCA charged a higher price for its vehicles than their true value, and FCA obtained monies which rightfully belong to Plaintiff.

278.   FCA enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and other Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for FCA to retain these wrongfully obtained profits.

279.   Therefore, Plaintiff seeks an order establishing FCA as constructive trustee of the unjustly obtained profits, plus interest.

**D.     Claims Brought on Behalf of the Maine Class**

## COUNT XIV

**VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT**
**(Me. Rev. Stat. Ann. Tit. 5 § 205-a et seq.)**
**(By Plaintiff White on behalf of the Maine Subclass)**

280.    Plaintiff White ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

281.    Plaintiff brings this cause of action against FCA on behalf of herself and the Maine Class.

282.    Plaintiff, the Maine State Class members, and FCA are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5 § 206(2).

283.    FCA is engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5 § 206(3)

284.    The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Me. Rev. Stat. Ann. Tit. 5 § 207.

285.    In the course of its business, FCA through its agents, employees, and/or subsidiaries, violated the Maine UTPA as detailed above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles, FCA engaged in one or more of the following unfair or deceptive acts or practices as defined in Me. Rev. Stat. Ann. Tit. 5 § 207:

a.      causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b.      representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

c.      representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

d.      advertising the Class Vehicles with the intent not to sell or lease them as advertised;

e.      engaging in other conduct which created a likelihood of confusion or of misunderstanding; or

f.      using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

286.   FCA's concealment of the Sliding Door Latch Defect was material to Plaintiff and the Maine Class. Had they known of the Sliding Door Latch Defect, Plaintiff and the Maine Class would not have purchased or leased the Class Vehicles,

or—if the Class Vehicles' true nature had been disclosed and mitigated, they would have paid significantly less for them.

287.   The Maine Class members had no way of discerning that FCA's representations were false and misleading, or otherwise learning the facts that FCA had concealed or failed to disclose the Sliding Door Latch Defect.

288.   FCA had an ongoing duty in the course of its usual business to refrain from unfair and deceptive practices under the Maine UTPA.

289.   FCA owed Plaintiff and the Maine Class members a duty to disclose all the material facts concerning the Sliding Door Latch Defect because they possessed exclusive knowledge, they intentionally concealed that knowledge from the Maine Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

290.   Plaintiff and the Maine Class members suffered ascertainable loss and actual damages as a direct and proximate result of FCA's concealment, misrepresentations, and/or failure to disclose material information.

291.   FCA's violations present a continuing risk to the Maine Class members, as well as to the general public. FCA's unlawful acts and practices complained of herein affect the public interest.

292. Pursuant to Me. Rev. Stat. Ann. Tit. 5 § 213, Plaintiff and the Maine Class members seek an order awarding damages, punitive damages, and any other just and proper relief available under the Maine UTPA.

## COUNT XV

### FRAUDULENT CONCEALMENT
**(Based on Maine Law)**
**(By Plaintiff White on behalf of the Maine Subclass)**

293. Plaintiff White ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

294. Plaintiff brings this count on behalf of herself and the Maine Class members.

295. FCA made material omissions concerning a presently existing or past fact in that, for example, FCA did not fully and truthfully disclose to its customers the true nature of the Sliding Door Latch Defect, which was not readily discoverable until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

296. FCA was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

297.  In addition, FCA had a duty to disclose these omitted material facts because they were known and/or accessible only to FCA who had superior knowledge and access to the facts, and FCA knew they were not known to or reasonably discoverable by Plaintiff and the Maine Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

298.  FCA was in exclusive control of the material facts and such facts were not known to the public or the Maine Class members. FCA also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

299.  FCA actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Maine Class members to purchase the Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

300.  Plaintiff and the Maine Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiff and the Maine Class members were justified.

301.  Plaintiff and the Maine Class members reasonably relied on these omissions and suffered damages as a result.

302. As a result of these omissions and concealments, Plaintiff and the Maine Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

303. As a result of the concealment and/or suppression of the facts, Plaintiff and the Maine Class members sustained damage. Plaintiff and the Maine Class members reserve their right to elect either to (a) rescind their purchase or lease of the Class Vehicles and obtain restitution or (b) affirm their purchase or lease of the Class Vehicles and recover damages.

304. As a result of these omissions and concealments, Plaintiff and the Maine members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

305. FCA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the Maine members. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XVI

### BREACH OF IMPLIED WARRANTY
### (Me. Rev. State Tit. 11 §§ 2-314 and 2-1212)
### (By Plaintiff White on behalf of the Maine Subclass)

306.   Plaintiff White ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

307.   Plaintiff brings this count on behalf of herself and the Maine Class.

308.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11 §§ 2-314, and 2-1212.

309.   FCA was at all relevant times a "merchant" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

310.   With respect to leases, FCA was all relevant times a "lessor" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

311.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11 §§ 2-314, and 2-1212.

312.   FCA sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty.

The Class Vehicles were not in merchantable condition because their design violated state and federal laws.

313.   The Class Vehicles were not fit for their ordinary purpose of providing safe and reliable transportation.

314.   FCA breaches of the implied warranty of merchantability caused damage to the members of the Maine State Class in an amount of damages to be proven at trial.

## COUNT XVII

### BREACH OF EXPRESS WARRANTY
### (Me. Rev. Stat. Tit. §§ 2-313 and 2-1210)
### (By Plaintiff White on behalf of the Maine Subclass)

315.   Plaintiff White ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

316.   Plaintiff brings this count on behalf of herself and the Maine State Class.

317.   FCA was at all relevant times a "merchant" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

318.   With respect to leases, FCA was all relevant times a "lessor" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

319.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

320.   In connection with the sale or lease of the Class Vehicles, FCA provided purchasers of the Class Vehicles with its 3-year/36,000-mile New Vehicle Limited Warranty, which was an express warranty and became part of the basis of the parties' bargain.

321.   FCA's warranty formed a basis of the bargain that were reached when Plaintiff and other Maine Class members purchased or leased their Class Vehicles.

322.   Plaintiff and the Maine Class members experienced the Sliding Door Latch Defect within the warranty period. Despite the existence of warranties, FCA failed to inform Plaintiff and Maine Class members Class Vehicles contained the Defect.

323.   FCA breached the express warranty by failing to provide Plaintiff and the Maine Class members with a remedy to the Sliding Door Latch Defect at no cost to Plaintiff.

324.   Finally, because of FCA's breach of warranty as set forth herein, Plaintiff and the other Maine Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other Maine Class members of the purchase or lease price of all Class Vehicles

currently owned or leased, and for such other incidental and consequential damages allow.

**E.     Claims Brought on behalf of the Pennsylvania Class**

**COUNT XVIII**

**VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 Pa. Stat. Ann. §§ 201-11 *et seq.*)**
**(By Plaintiff Dobransky on behalf of the Pennsylvania Subclass)**

325.   Plaintiff Dobransky ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

326.   Plaintiff brings this count on behalf of herself and on behalf of the Pennsylvania Class ("Class" for purposes of this count).

327.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. Stat. Ann. § 201-3.

328.   FCA's design, manufacture, distribution, marketing, advertising, labeling, and sale of the Class Vehicles constitutes "trade and commerce" under 73 Pa. Stat. Ann.§ 201-2(3).

329.   FCA violated the UTPCPL by:

a.     representing that the Class Vehicles have certain safety characteristics and benefits that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v));

97

b.      failing to comply with the terms of a written guarantee or warranty given to the buyer (73 Pa. Stat. Ann. § 201-2(4)(xiv)); and

c.      engaging in deceptive conduct which creates a likelihood of confusion or misunderstanding about the Class Vehicles (73 Pa. Stat. Ann. § 201-2(4)(xxi)).

330.   FCA's deceptive conduct and its omissions regarding the Sliding Door Latch Defect, which causes the doors to become inoperable, are facts that a reasonable person would consider material when deciding whether or not to purchase or lease (or how much they were willing to pay to purchase or lease) a Class Vehicle.

331.   FCA's materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff and members of the Statewide Class, and were likely to mislead reasonable consumers, including Plaintiffs and Class Members.

332.   Had FCA disclosed all material information regarding the Sliding Door Latch Defect, Plaintiff and the other Class Members would not have purchased or leased Class Vehicles or would have paid less to do so.

333.   FCA's deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiff, and those same business practices have deceived

or are likely to deceive members of the consuming public and the other members of the Class.

334.   Plaintiff and the other Class Members justifiably acted or relied to their detriment upon FCA's misrepresentations and omissions of fact, as evidenced by Plaintiff's and the other Class Members' leasing and purchasing of Class Vehicles.

335.   As a direct and proximate result of FCA's deceptive acts and practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members would not have purchased or leased the Class Vehicles or would have paid less for them had FCA disclosed the truth about the Sliding Door Latch Defect. Plaintiff and the other Class Members also suffered diminished value of their vehicles.

336.   Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiff and the Class also seek an order for: actual and treble damages; appropriate injunctive relief (including requiring FCA to engage in a state of the art notice program to notify owners and lessees to stop using their Class Vehicles and to offer Class Members free loaner vehicles of the same class as their own Class Vehicles, covered by the same warranties, until their Class Vehicles can be repaired and rendered safe); costs; and reasonable attorneys' fees.

## COUNT XIX

### BREACH OF EXPRESS WARRANTY
### (13 Pa. C.S. § 2101 *et seq.*)
### (By Plaintiff Dobransky on behalf of the Pennsylvania Subclass)

337.   Plaintiff Dobransky ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

338.   Plaintiff brings this count on behalf of herself and on behalf of the Pennsylvania Class ("Class" for purposes of this Count).

339.   Pursuant to 13 PA. C.S. § 2104, FCA is and was at all relevant times a merchant with respect to the Class Vehicles.

340.   Pursuant to 13 PA. C.S. § 2313(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

341.   In its written express warranties, FCA expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

342.   FCA's written express warranties formed the basis of the bargain reached when Plaintiff and the other Class Members purchased or leased their Class Vehicles.

343.   FCA breached its express warranty to repair defective parts in the Class Vehicles. FCA admittedly has not repaired the Class Vehicles' Sliding Door Latch Defect.

344.   Further, FCA has refused to provide an adequate warranty repair for the Sliding Door Latch Defect, thus rendering the satisfaction of any notice requirement futile. As stated above customers that have presented their vehicles for warranty repair due to Door Latch failure have been denied adequate repairs.

345.   The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because FCA has failed and/or has refused to adequately provide effective remedies within a reasonable time.

346.   Accordingly, recovery by Plaintiff and the other Class Members is not limited to the limited remedy of repair, and Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

347.   Also, as alleged in more detail herein, at the time that FCA warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and FCA improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class Members were therefore induced to purchase or lease the FCA Vehicles under false pretenses.

348.   FCA had notice of its breach as alleged herein.

349.   As a direct and proximate result of FCA's breach of its express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

## COUNT XX

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. Cons. Stat. §§ 2314 and 2A212)
### (By Plaintiff Dobransky on behalf of the Pennsylvania Subclass)

350.   Plaintiff Dobransky ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

351.   Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

352.   FCA is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of motor vehicles under § 2103(a).

353.   With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

354.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

355.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied in law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

356.    The Class Vehicles, when sold or leased and at all times hereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles are inherently defective in that they contain the Sliding Door Latch Defect which causes the doors to become inoperable.

357.    Plaintiff and the other Class Members suffered injuries due to the defective nature of the Class Vehicles and FCA's breach of the implied warranty of merchantability.

358.    FCA had notice of its breach as alleged herein.

359.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Class Members have been damaged in an amount to be proven at trial.

## COUNT XXI

### FRAUDULENT OMISSION
### (Under Pennsylvania Law)
### (By Plaintiff Dobransky on behalf of the Pennsylvania Subclass)

360.    Plaintiff Dobransky ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

361.   Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

362.   Defendant was aware of the Sliding Door Latch when it marketed and sold the Class Vehicles to Plaintiff and the other Class Members.

363.   Having been aware of the Sliding Door Latch Defect and having known that Plaintiff and the other Class Members could not have reasonably been expected to know of this defect, Defendant had a duty to disclose the Sliding Door Latch Defect to Plaintiff and the other Class Members in connection with the sale or lease of the Class Vehicles.

364.   Defendant did not disclose the Sliding Door Latch Defect to Plaintiff and the other Class Members in connection with the sale or lease of the Class Vehicles.

365.   For the reasons set forth above, the Sliding Door Latch Defect in the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

366.   In purchasing or leasing the Class Vehicles, Plaintiff and the other Class Members reasonably relied on Defendant to disclose known material defects with respect to the Class Vehicles. Had Plaintiff and the other Class Members known of the Sliding Door Latch Defect in the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

367.    Through its omissions regarding the Sliding Door Latch Defect in the Class Vehicles, Defendant intended to induce, and did induce, Plaintiff and the other Class Members to purchase or lease a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

368.    As a direct and proximate result of FCA's omissions, Plaintiff and the other Class Members either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the Sliding Door Latch Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**F.    Claims Brought on Behalf of the Virginia Class**

**COUNT XXII**

**VIRGINIA CONSUMER PROTECTION ACT**
**(Va. Code Ann. § 59.1-196, *et seq.*)**
**(By Plaintiff Zadrozny on behalf of the Virginia Subclass)**

369.    Plaintiff Zadrozny ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

370.    Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

371.    FCA, Plaintiff, and the other Class members are "persons" within the meaning of the Virginia Consumer Protection Act ("VCPA").

372.   In selling and leasing the Class Vehicles, FCA was engaged within a "consumer transaction" within the meaning of the VCPA.

373.   The VCPA prohibits any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

374.   The VCPA prohibits "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model."

375.   The VCPA prohibits "[a]dvertising or offering for sale goods that are used, secondhand, repossessed, defective, blemished, deteriorated, or reconditioned, or that are 'seconds,' irregulars, imperfects, or 'not first class,' without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are used, secondhand, repossessed, defective, blemished, deteriorated, reconditioned, or are "seconds," irregulars, imperfects or "not first class.""

376.   The VCPA prohibits "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised."

377.   By the conduct described in detail above and incorporated herein, FCA engaged in unfair or deceptive acts in violation of the VCPA.

378.   FCA's omissions regarding the Sliding Door Latch Defect, described above, that results in the rear sliding doors becoming inoperable, are material facts

that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the vehicle.

379.   FCA intended for Plaintiff to rely on FCA's omissions of fact regarding the Sliding Door Latch Defect.

380.   Plaintiff justifiably acted or relied to her detriment upon FCA's omissions of fact concerning the above-described Sliding Door Latch Defect, as evidenced by Plaintiff's purchase of her vehicle.

381.   Had FCA disclosed all material information regarding the Sliding Door Latch Defect to Plaintiff, then Plaintiff would not have purchased or leased the vehicle or would have paid less to do so.

382.   FCA's omissions deceived Plaintiff and the other Class members.

383.   FCA acted willfully in concealing, and not disclosing, the Sliding Door Latch Defect from Plaintiff and the other Class members.

384.   In addition to being deceptive, the business practices of FCA were unfair because FCA knowingly sold to Plaintiff a vehicle with a defective engine that is essentially unusable for the purposes for which they were sold. The injuries to Plaintiff are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff or to any competition under all of the circumstances. Moreover, in light of FCA's exclusive knowledge of the Sliding Door Latch Defect, the injury is not one that Plaintiff could have reasonably avoided.

385.    Further, and to the extent required by law, FCA had a duty to disclose the Sliding Door Latch Defect because disclosure was necessary to dispel misleading impressions about the Class Vehicles' reliability and durability that were or might have been created by partial representation of the facts. Specifically, FCA promoted, through advertisements available to all Class members, that the vehicles were reliable and safe family vehicles. Specifically, FCA owed Plaintiff and Class members a duty to disclose all the material facts concerning the Sliding Door Latch Defect because it possessed exclusive knowledge, it intentionally concealed the defect from Plaintiff and the Class, and/or it made misrepresentations that were misleading because they were contradicted by facts FCA withheld.

386.    FCA's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff and the other Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

387.    Plaintiff and the other Class members suffered ascertainable loss and actual damages as a direct result of FCA's concealment of and failure to disclose material information, namely, the Sliding Door Latch Defect. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have done so, or would have paid significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles.

388.   Defendant's violations present a continuing risk to Plaintiff and the Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

389.   Plaintiff and the Class seek an compensatory damages, punitive damages, reasonable attorneys' fees, and any other just and proper relief available under the VCPA.

## COUNT XXIII

### BREACH OF EXPRESS WARRANTY
### (Va. Code Ann. §§ 8.2-313 and 8.2a-210)
### (By Plaintiff Zadrozny on behalf of the Virginia Subclass)

390.   Plaintiff Zadrozny ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

391.   Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

392.   FCA is and was at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. § 8.2-104 and is a "seller" of motor vehicles under § 8.2-103.

393.   With respect to leases, FCA is and was all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8.2a-103.

394.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. § 8.2-105 and 8.2a-103.

395.   In its Limited Warranty, FCA expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.

396.   FCA's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

397.   FCA breached the express warranty to repair "any defect" by failing to repair the Sliding Door Latch Defect.

398.   FCA has not repaired, and has been unable to repair, the Sliding Door Latch Defect.

399.   FCA has notice of its breach as alleged herein.

400.   Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because FCA has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

401.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

402.   Also, as alleged in more detail herein, at the time that FCA warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and FCA improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

403.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to FCA's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

404.   As a direct and proximate result of FCA's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XXIV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Va. Code Ann. §§ 8.2-314 and 8.2a-212)
### (By Plaintiff Zadrozny on behalf of the Virginia Subclass)

405.   Plaintiff Zadrozny ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

406.   Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

407.   FCA is and was at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. § 8.2-104 and is a "seller" of motor vehicles under § 8.2-103.

408.   With respect to leases, FCA is and was all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8.2a-103.

409.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. § 8.2-105 and 8.2a-103.

410.   FCA manufactured and sold the defective Class Vehicles to Plaintiff and the other Class members.

411.   The Class Vehicles are defective because the rear sliding doors are defective, causing them to become inoperable.

412.   These defects existed at the time the Class Vehicles left FCA's control.

413.   Based upon these defects, FCA has failed to meet the expectations of a reasonable consumer. The Class Vehicles are unfit for their ordinary, intended use, because they suffer from the Sliding Door Latch Defect.

414.   FCA had notice of its breach as alleged herein.

415.   Moreover, notice is futile because FCA has continually failed to provide adequate remedies to Plaintiff and Class members.

416.   The above-described defects in the Class Vehicles were the direct and proximate cause of economic damages to Plaintiff and the other Class members.

## COUNT XXV

### FRAUDULENT CONCEALMENT/OMISSION
### (Under Virginia Law)
### (By Plaintiff Zadrozny on behalf of the Virginia Subclass)

417.   Plaintiff Zadrozny ("Plaintiff" for purposes of this count) incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

418.   Plaintiff brings this Count individually and on behalf of the other members of the Virginia Class (the "Class," for purposes of this Count).

419.   FCA was aware of the Sliding Door Latch Defect when it marketed and sold the Class Vehicles to Plaintiff and the other Class members.

420.   Having been aware of the Sliding Door Latch Defect and knowing that Plaintiff and the other Class members could not have reasonably been expected to know about the defect, FCA had a duty to disclose the Sliding Door Latch Defect to Plaintiff and the other Class members in connection with the sale or lease of the Class Vehicles.

421.   Further, FCA had a duty to disclose the Sliding Door Latch Defect because disclosure was necessary to dispel misleading impressions about the Class Vehicles' reliability and durability that were or might have been created by partial representation of the facts. Specifically, FCA promoted, through its advertisements

available to all Class members, that the vehicles were reliable and durable. FCA also disclosed information concerning the Generation IV Vortec 5300 Engines in window stickers associated with the Class Vehicles, without disclosing that these engines contained an inherent defect that would be material to any purchaser or lessee.

422. FCA did not disclose the Sliding Door Latch Defect to Plaintiff and the other Class members in connection with the sale or lease of the Class Vehicles.

423. For the reasons set forth above, the Sliding Door Latch Defect comprises material information with respect to the sale or lease of the Class Vehicles.

424. In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members reasonably relied on FCA to disclose known material defects with respect to the Class Vehicles. Had Plaintiff and the other Class members known of the Sliding Door Latch Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

425. Through its omissions regarding the latent Sliding Door Latch Defect, FCA intended to induce, and did induce, Plaintiff and the other Class members to purchase or lease a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

426. As a direct and proximate result of FCA's omissions, Plaintiff and the other Class members either paid too much for the Class Vehicles or would not have

purchased the Class Vehicles if the Sliding Door Latch Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## VIII   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

1.     For an order certifying this action as a class action;

2.     For an order appointing Plaintiffs as representatives of the Classes and Plaintiffs' counsel of record as Class counsel;

3.     For an award of actual, general, special, incidental, statutory, compensatory, and consequential damages and in an amount to be proven at trial;

4.     For an award of exemplary and punitive damages in an amount to be proven at trial;

5.     For an order enjoining the wrongful conduct alleged herein;

6.     For costs;

7.     For interest;

8.     For such equitable relief as the Court deems just and appropriate, including but not limited to, rescission; restitution; and disgorgement; and

9.     For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: August 19, 2021

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

Richard D. McCune
David C. Wright
Steven A. Haskins
Mark I. Richards
**MCCUNE WRIGHT AREVALO LLP**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
J. Mitch Williams
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
272 Commerce Street Montgomery,
Alabama 36104
(334) 269-2343
dee.miles@beasleyallen.com
clay.barnett@beasleyallen.com
mitch.williams@beasleyallen.com

Adam J. Levitt
John E. Tangren
Daniel R. Ferri
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602

Telephone: 312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

*Attorneys for Plaintiff and the Proposed
Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2021, I electronically filed the foregoing papers using the ECF system which will send electronic notices of same to all counsel of record.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)